AO 91 (Rev. 11/11) Criminal Complaint  AUSA Kavitha J. Babu (312) 353-1980

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

UNITED STATES OF AMERICA

v.

BRANDON SEANIOR,
    also known as "Zo"

CASE NUMBER:

**UNDER SEAL**

FILED
APR 06 2018
MAGISTRATE JUDGE
SHEILA M. FINNEGAN

MAGISTRATE JUDGE FINNEGAN

## CRIMINAL COMPLAINT 18CR 217

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

### COUNT ONE

On or about December 13, 2017, at Chicago, in the Northern District of Illinois, Eastern Division, the defendant violated:

*Code Section*

Title 21, United States Code, Section 841(a)(1)

*Offense Description*

Knowingly and intentionally distributed a controlled substance, namely a quantity of a mixture and substance containing a detectable amount of fentanyl (N-phenyl-N-1 [1-(2-phenylethyl)-4-piperindinyl] propanamide), a Schedule II Controlled Substance

### COUNT TWO

On or about December 27, 2017, at Chicago, in the Northern District of Illinois, Eastern Division, the defendant violated:

*Code Section*

Title 21, United States Code, Section 841(a)(1)

*Offense Description*

Knowingly and intentionally distributed a controlled substance, namely a quantity of a mixture and substance containing a detectable amount of fentanyl (N-phenyl-N-1 [1-(2-phenylethyl)-4-piperindinyl] propanamide), a Schedule II Controlled Substance, and a quantity of a mixture and substance containing a detectable amount of cocaine base, a Schedule II Controlled Substance

RECEIVED
APR - 6 2018
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## COUNT THREE

On or about January 25, 2018, at Chicago, in the Northern District of Illinois, Eastern Division, the defendant violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Section 841(a)(1) | Knowingly and intentionally distributed a controlled substance, namely a quantity of a mixture and substance containing heroin, a Schedule I Controlled Substance, and a quantity of a mixture and substance containing a detectable amount of cocaine base, a Schedule II Controlled Substance |

This criminal complaint is based upon these facts:

__X__ Continued on the attached sheet.

_____
JOHN GONZALEZ
Task Force Officer, Drug Enforcement Administration (DEA)

Sworn to before me and signed in my presence.

Date: April 6, 2018

_____
Judge's signature

City and state: Chicago, Illinois

SHEILA FINNEGAN, U.S. Magistrate Judge
Printed name and Title

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
ss

## AFFIDAVIT

I, JOHN GONZALEZ, being duly sworn, state as follows:

1. I am a Task Force Officer with the Drug Enforcement Administration, and have been so employed for 5 years. Prior to becoming a Task Force Officer with the DEA, I was a police officer with the Chicago Police Department, Chicago, Illinois for 19 years. As a police officer, I investigated various criminal offenses, including narcotics offenses.

2. As part of my duties as a DEA Task Force Officer, I investigate criminal violations relating to narcotics trafficking offenses, including criminal violations of the Federal Controlled Substance laws, including, but not limited to Title 18, United States Code, Sections 1956, and 1957, and Title 21, United States Code, Sections 841, 843, 846, 848, 952 and 963. I have been involved with various electronic surveillance methods, the debriefing of defendants, informants, and witnesses, as well as others who have knowledge of the distribution, transportation, storage and importation of controlled substances.

3. This affidavit is submitted in support of a criminal complaint alleging that Brandon SEANIOR, also known as "Zo," has violated Title 21, United States Code, Section 841(a)(1). Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging SEANIOR with distribution of heroin, fentanyl, and cocaine base, I have not included

each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed the offense alleged in the complaint.

4. This affidavit is based on my personal knowledge, information provided to me by other law enforcement agents and in law enforcement records, review of recorded conversations, review of public records databases, and my training and experience, as well as the training and experience of other law enforcement agents.

## FACTS SUPPORTING PROBABLE CAUSE

5. In summary, and as set forth in more detail below, on or about December 13, 2017, SEANIOR sold approximately 4.1 grams of fentanyl to an undercover law enforcement officer (the "UC"); on or about December 27, 2017, SEANIOR sold approximately 3.78 grams of fentanyl and 25.5 grams of cocaine base to the UC; and on or about January 25, 2018, SEANIOR sold approximately 3.73 grams of heroin and 27.4 grams of cocaine base to the UC.[1]

---

[1] Prior to the December 27, 2017 transaction, at the direction of law enforcement and as corroborated by audio/video recordings, on November 16, 2017, SEANIOR sold 3.5 grams of fentanyl to CS-2. In addition, on November 28, 2017, SEANIOR sold 3.1 grams of fentanyl to CS-2 and the UC. On December 21, 2017, SEANIOR sold 3.2 grams of fentanyl to the UC. Confidential Source-2 (CS-2) has been a confidential source for CPD since March 2010 and has been an active confidential source for DEA since March 2017. Information provided by CS-2 has been reliable and credible, and certain information has been corroborated from external sources, including consensually recorded calls, surveillance, and the successful controlled purchases of narcotics. CS-2 has agreed to assist law enforcement in exchange for payments. Criminal records reflect that CS-2 has nine convictions, including multiple convictions for narcotics offenses, as well as convictions for invasion of privacy, prostitution and larceny. To date, CS-2 has received cash payments totaling approximately $6,450 from law enforcement during the course of this investigation, and a total of approximately $9,126 for assisting CPD in other investigations.

A. **December 13, 2017: SEANIOR Sold Approximately 4.1 Grams of Fentanyl to the UC**

6. On or about December 13, 2017, at approximately 1:30 p.m., the UC called SEANIOR, who was using XXX-XXX-9125 ("Seanior Phone 1"). SEANIOR did not answer and the UC left a voicemail asking SEANIOR to call back.

7. At approximately 2:09 p.m., SEANIOR[2], using Seanior Phone 1, called the UC and they agreed to meet at a store on the 1300 block of E. 47th Street in Chicago in ten minutes.[3] Other law enforcement officers established surveillance of the parking lot of the store on the 1300 block of E. 47th Street. The UC, driving an undercover vehicle, arrived at the store on the 1300 block of E. 47th Street at approximately 2:15 p.m.

8. At approximately 2:25 p.m., law enforcement observed a silver Toyota Camry bearing Illinois registration 440T721, registered to Brandon SEANIOR

---

[2] Identification of SEANIOR and his voice in this affidavit is based on (1) law enforcement who participated in November 16, 2017 and November 28, 2017 purchases of fentanyl from SEANIOR are familiar with SEANIOR's voice and appearance from reviewing the audio and video recordings of consensual meetings between SEANIOR and CS-2 on November 16, 2017 and between SEANIOR and CS-2 and the UC on November 28, 2017 and (2) a comparison with an Illinois Driver's License photograph of SEANIOR.

[3] The investigation included the use of recorded telephone calls. The summaries of recorded conversations in this affidavit do not include reference to all of the topics covered during the conversations. Further, quoted material from the recorded conversations as set out in this affidavit is taken from draft summaries, not final transcripts. In addition, the summaries do not include references to all statements made by the speakers on the topics that are described by the speakers. In certain of the paragraphs describing calls set forth below, interpretations of the discussion are included in brackets. These interpretations include meanings attributed to code words, coded language, or vague references used by the speakers. My understanding and interpretation of the conversations is based upon the contents of the conversations, information provided by the confidential source, the context of both prior and subsequent intercepted conversations, my knowledge derived from this investigation, and my experience and familiarity, and the experience and familiarity of other law enforcement agents, with narcotics trafficking.

("Seanior Vehicle 1"), arrive in the parking lot of the store on the 1300 block of E. 47th Street and park south of the undercover vehicle. Law enforcement then observed the UC exit the undercover vehicle, walk to Seanior Vehicle 1 and enter the front passenger seat.

9. According to the UC and audio/video recording in the car, SEANIOR handed the UC eleven small clear plastic baggies, each containing a white powder substance. The UC then handed SEANIOR $100 as payment for the baggies. The UC told SEANIOR that the UC would call him later next week and SEANIOR agreed. The UC then exited Seanior Vehicle 1 and returned the undercover vehicle.

10. The white powder substance in the eleven baggies was tested by a forensic chemist at the Illinois State Police Division of Forensic Services and found to contain 4.1 grams of fentanyl (N-phenyl-N-1 [1-(2-phenylethyl)-4-piperindinyl] propanamide).

    **B.**    **December 27, 2017: SEANIOR Delivered Approximately 3.78 Grams of Fentanyl and 25.5 Grams of Cocaine Base to the UC**

11. On or about December 27, 2017, at approximately 10:00 a.m., the UC placed several unanswered phone calls to Seanior Phone 1 and left messages asking that SEANIOR call the UC back. At approximately 10:36 a.m., SEANIOR, using Seanior Phone 1, called the UC, and during the call, the UC and SEANIOR agreed to meet in approximately 30-45 minutes.

12. At approximately 11:40 a.m., the UC called SEANIOR, who was using Seanior Phone 1, and asked how much longer it would be. SEANIOR instructed the

UC to meet him near the corner of E. 35th St and S. Cottage Grove Avenue. The UC agreed and said that the UC would call SEANIOR when on the way.

13. Law enforcement then established surveillance in the area of 35th St and S. Cottage Grove Avenue.

14. At approximately 12:00 p.m., the UC called SEANIOR and told him the UC could be there in about 10 minutes. SEANIOR told the UC to park across from a community center on the 3500 block of S. Cottage Grove Ave. The UC agreed.

15. At approximately 12:06 p.m., SEANIOR called the UC and asked where the UC was. The UC asked where the community center was. SEANIOR described the building and instructed the UC to park alongside the building.

16. At approximately 12:08 p.m., the UC and another undercover law enforcement officer ("UC2") parked the undercover vehicle where SEANIOR had instructed, and then called SEANIOR, who was using Seanior Phone 1. According to the audio recording and the UC, SEANIOR asked what type of car the UC was driving and the UC responded, "the same black car." SEANIOR then asked if the UC "wanted the usual," which meant a quantity of heroin. The UC confirmed and added that the UC wanted the "O" [ounce] that they had previously discussed[4] for the UC's friend. Based on the UC and my training and experience, I understood the "O" to mean an

---

[4] As referenced in Footnote 1 above, SEANIOR sold 3.2 grams of fentanyl to the UC on December 21, 2017. The transaction was audio and video recorded. According to the UC and the recording during the December 21, 2017 transaction, the UC asked SEANIOR if he could sell the UC an ounce of cocaine base. SEANIOR told the UC it would be $1,200 and that the UC should call him when the UC was ready.

5

ounce of cocaine base. SEANIOR agreed and said that his friend would deliver the narcotics, and that the friend was light-skinned, wearing blue jeans and a blue jacket.

17. According to the UC and the recordings, at approximately 12:12 p.m., a light skinned black male, wearing a black jacket, blue jeans, and white scarf, ("Individual A") entered the rear passenger side seat of the undercover vehicle. The UC asked UC2 to give Individual A the money, and UC2 turned and handed Individual A $1,300. Individual A handed the UC eleven clear Ziploc bags which each contained white powder and one clear hand knotted plastic bag containing white chunky substance. Individual A then counted the $1,300 and exited the undercover vehicle. As Individual A was exiting, the UC told Individual A to tell SEANIOR that the UC would be calling SEANIOR.

18. At approximately 12:13 p.m., the UC and UC2 drove away from the community center.

19. The white powder substance in the eleven baggies was tested by a forensic chemist at the DEA North Central Laboratory and found to contain 3.78 grams of fentanyl (N-phenyl-N-1 [1-(2-phenylethyl)-4-piperindinyl] propanamide).

20. The white chunky substance in the clear hand knotted plastic bag was tested by a forensic chemist at the DEA North Central Laboratory and found to contain 25.5 grams of cocaine base.

### C. January 25, 2018: SEANIOR Delivered Approximately 3.73 Grams of Heroin and 27.4 Grams of Cocaine Base to the UC

21. On January 25, 2018, at approximately 1:29 p.m., the UC, driving an undercover vehicle, arrived at a building on the 3500 block of S. Cottage Grove Ave.[5] At approximately 1:30 p.m., according to the UC and recordings, the UC called SEANIOR notifying him that the UC had arrived. Other law enforcement officers established surveillance of the area.

22. At approximately 1:39 p.m., law enforcement observed SEANIOR, wearing a blue puffy jacket and blue jeans, exit the fenced area around a building on the 3500 block of S. Cottage Grove Ave. and enter the undercover vehicle on the front passenger seat side. According to the UC and the recording, SEANIOR told the UC that he did not have the cocaine base ready, but did have heroin ready for the UC to purchase. SEANIOR then asked the UC if the UC noticed a black van following the UC. The UC said no, but that SEANIOR was making the UC nervous. SEANIOR reassured the UC that everything was fine and that someone would bring the heroin.

23. At approximately 1:42 p.m., law enforcement observed SEANIOR exit the undercover vehicle, re-enter the fenced area around a building on the 3500 block of S. Cottage Grove Ave., and walk out of view.

---

[5] According to the UC and audio and video recordings, on January 4, 2018, the UC arranged to buy 28 grams of cocaine base and an amount of heroin from SEANIOR, but SEANIOR did not have the cocaine base ready. Instead, according to the UC and audio and video recordings, Individual B, at the direction of SEANIOR, met the UC in an undercover vehicle and sold the UC eleven small baggies of a white powder. The UC purchased the white powder for $100 and agreed to meet SEANIOR at a later date to purchase 28 grams of cocaine base. The white powder later was tested by the Illinois State Police Division of Forensic Services and found to contain approximately 3.3 grams of fentanyl.

24. At approximately 1:47 p.m., law enforcement observed an unknown black male wearing a grey hooded sweat shirt and black jeans ("Individual C") enter the front passenger seat of the undercover vehicle. According to the UC and the audio and video recordings of the transaction, Individual C pulled eleven clear Ziploc bags which each contained white powder from his pants pocket and gave them to the UC. The UC gave Individual C $120 in return and asked if he could provide change. Individual C said no. The UC told Individual C that the UC would get the $10 change from SEANIOR when the UC returned to purchase the cocaine base.

25. At approximately 1:48 p.m., law enforcement observed Individual C exit the undercover vehicle and re-enter the fenced area around a building on the 3500 block of S. Cottage Grove Ave. The UC left the area.

26. At approximately 2:36 p.m, the UC called SEANIOR, who was using Seanior Phone 1. During the call, SEANIOR stated that he need 15 more minutes. At approximately 2:58 p.m., the UC called SEANIOR, who was using Seanior Phone 1, and stated that the UC was ready to meet. SEANIOR confirmed and said he'd be ready in five minutes.

27. At approximately 3:10 p.m., the UC arrived at the building on the 3500 block of S. Cottage Grove Ave. and parked in front. The UC then attempted to call SEANIOR on Seanior Phone 1, but he did not answer.

28. At approximately 3:25 p.m., law enforcement observed Individual C exit the fenced area around the same building on the 3500 block of S. Cottage Grove Ave, and enter the front passenger seat of the undercover vehicle. According to the UC

8

and the audio and video recordings of the transaction, Individual C handed the UC a clear hand-knotted bag that contained 8 smaller clear bags that each contained a white chunky substance, suspected to be cocaine base, and $10 as change for the heroin transaction earlier in the day. The UC gave Individual C $1,190 for the suspected cocaine base.

29. At approximately 3:26 p.m., law enforcement observed Individual C exit the undercover vehicle, re-enter the fenced area around the building on the 3500 block of S. Cottage Grove Ave, and walk out of view.

30. The white powder substance in the eleven baggies was tested by a forensic chemist at the DEA North Central Laboratory and found to contain 3.73 grams of heroin.

31. The white chunky substance in the clear hand knotted plastic bag was tested by a forensic chemist at the DEA North Central Laboratory and found to contain 27.4 grams of cocaine base.

**CONCLUSION**

32. Based on the foregoing, I believe there is probable cause to believe that, (1) on or about December 13, 2017, Brandon SEANIOR, also known as "Zo," knowingly and intentionally distributed a controlled substance, namely 4.1 grams of fentanyl (N-phenyl-N-1 [1-(2-phenylethyl)-4-piperindinyl] propanamide), a Schedule II Controlled Substance; (2) on or about December 27, 2017, SEANIOR knowingly and intentionally distributed a controlled substance, namely 3.78 grams of fentanyl (N-phenyl-N-1 [1-(2-phenylethyl)-4-piperindinyl] propanamide), a Schedule II

Controlled Substance, and 25.5 grams of cocaine base, a Schedule II Controlled; and (3) on or about January 25, 2018, SEANIOR knowingly and intentionally distributed a controlled substance, namely 3.73 grams of heroin, a Schedule I Controlled Substance, and 27.4 grams of cocaine base, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

FURTHER AFFIANT SAYETH NOT.

_____
JOHN GONZALEZ
Task Force Officer, Drug Enforcement Administration

SUBSCRIBED AND SWORN to before me on April 6, 2018.

_____
SHEILA FINNEGAN
United States Magistrate Judge